**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA DOMENICA MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV328 JCH |
| | ) | |
| ASCENSION LONG-TERM DISABILITY PLAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Ascension Long-Term Disability Plan's Motion for Summary Judgment, filed March 4, 2016, and Plaintiff Maria Moore's Motion for Summary Judgment, filed March 16, 2016. (ECF Nos. 24, 31). The motions are fully briefed and ready for disposition.

## BACKGROUND

At all relevant times Plaintiff Maria Moore was employed as a Medical Biller at St. John Medical Resource Group, a part of St. John Providence Health System in Warren, Michigan. (Defendant's Statement of Uncontroverted Material Facts in Support of its Motion for Summary Judgment ("Defendant's Facts"), ¶¶ 1, 15, citing AH 223).[1] As a Medical Biller, Plaintiff's responsibilities included providing detailed analysis of accounts after initial billing, in order to ensure timeliness of payments, maximum collectability, and account resolution. (AH 310). Plaintiff also provided assistance and feedback to billing clerks, as necessary. (*Id.*).

Ascension Health Alliance d/b/a Ascension ("Ascension") was the sponsor and administrator for the self-funded Long-Term Disability Plan ("LTD Plan") available to eligible

---

1 Citations designated AH refer to the administrative record filed with the Court on October 16, 2015, and marked AH 1 – AH 1547.

employees of St. John Providence Health System.  (Defendant's Facts, ¶¶ 1, 3, citing AH 12, 55, 106).[1]  In accordance with the terms of the LTD Plan, Ascension delegated the discretionary authority with regard to claims administration to Sedgwick Claims Management Services, Inc. ("Sedgwick"), the Claims Administrator.  (*Id.*, ¶¶ 4-6, citing AH 8, 15-18, 100, 122).

The LTD Plan contains the following relevant definitions:

**1.11    Disability or Disabled** means that due to an Injury or Sickness which is supported by objective medical evidence,

(a)    the Participant requires and is receiving from a Licensed Physician regular, ongoing medical care and is following the course of treatment recommended by the Licensed Physician; and….

(1)    The Participant is unable to perform:

(A)  during the first 24 months of Benefit payments, or eligibility for Benefit payments, each of the Material Duties of the Participant's Regular Occupation[2]; and
(B)  after the first 24 months of Benefits payments, or eligibility for Benefits payments, any work or service for which the Participant is reasonably qualified taking into consideration the Participant's training, education, experience and past earnings.[3]

**1.26    Material Duties** means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience generally required by employers from those engaged in a particular occupation that cannot be reasonably modified or omitted.

**1.40    Regular Occupation** means the activities that the Participant regularly performed when the Participant's Disability began.  In addition to the specific position or job the Participant holds with the Participant's employer, Regular Occupation also includes other positions and jobs for which the Participant has training and/or education to perform in the Participant's profession at the Participant's Employer or any other employer.  If the Participant's Regular

---

[1] The LTD Plan is an employee welfare benefit plan, governed by the Employee Retirement Income Security Act ("ERISA").  (Defendant's Facts, ¶ 2).

2 Thus, during the first 24 months of Disability, an LTD Plan participant must be unable to perform the activities she regularly performed when her Disability began, a standard known as the "Own Occupation" standard.  (Defendant's Facts, ¶ 12, citing AH 8, 9, 11, 13, 132).

3 Thus, after the first 24 months of Disability, an LTD Plan participant must be unable to perform "any work or service for which the Participant is reasonably qualified," a standard known as the "Any Occupation" standard.  (Defendant's Facts, ¶ 13, citing AH 8).

Occupation involves the rendering of professional services and the Participant is required to have a professional or occupational license in order to work, the Participant's Regular Occupation is as broad as the scope of his or her license.

(AH 8, 11, 13).

Plaintiff stopped working on or around November 16, 2011. (Defendant's Facts, ¶ 17, citing AH 158). On November 17, 2011, Dr. Andres Munk, M.D., an orthopedic spine surgeon, performed anterior cervical decompression and fusion with instrumentation at the C5-C6 level. (*Id.*, ¶¶ 18, 20; AH 172-175). On December 1, 2011, Dr. Munk entered a Medical/Progress Report, stating that two-weeks postoperative Plaintiff stated that she was feeling good, and most of her right arm pain was gone. (AH 150). Dr. Munk noted that Plaintiff's incision was healed well, she only rotated about 20 degrees in each direction, and neurologically she was intact. (*Id.*).

In a letter dated December 15, 2011, Sedgwick acknowledged receipt of Plaintiff's claim for Short-Term Disability ("STD") benefits. (AH 141). At Sedgwick's request, Dr. Munk completed an Attending Physician Statement ("APS") on December 22, 2011, in which he noted that Plaintiff's primary diagnosis was cervical radiculopathy. (AH 158). Dr. Munk indicated Plaintiff was unable to work from November 17, 2011, through approximately February 17, 2012. (*Id.*). On December 30, 2011, Sedgwick informed Plaintiff that her STD benefits were approved as of December 1, 2011. (AH 186). The letter informed Plaintiff that in order to determine her benefits beyond January 11, 2012, Sedgwick would require updated objective medical records from Dr. Munk, to document Plaintiff's physical restrictions preventing her from performing the substantial material duties of her occupation. (*Id.*).

On January 12, 2012, Dr. Munk completed a Medical/Progress Report, in which he indicated that Plaintiff's biggest complaint was her low back. (AH 190). Plaintiff stated her pain

was "excruciating", and she wanted to schedule a surgical intervention. (*Id.*). Dr. Munk continued as follows:

> **PHYSICAL EXAMINATION:** Her previous incision around the cervical spine is healed and is otherwise benign. She is relatively stiff in the neck and she needs to work with physical therapy still. As far as her low back is concerned her abdomen is flat. She has a Pfannenstiel type of incision from her previous tummy tuck.
>
> **RADIOGRAPHS:** X-rays of her cervical neck show a one-level ACDF in perfect position. There is no back out or failure or adjacent level disease.
>
> **IMPRESSION:** Discogenic type pain at L4-L5 and L5-S1.
>
> **PLAN:** I will set her up to see Dr. Hares to decide if we can do a surgical approach after a tummy tuck procedure. I will also get an updated MRI and I will see her back in two to three weeks.

(*Id.*). Dr. Munk completed another Medical/Progress Report on January 26, 2012, in which he indicated that Plaintiff has obvious discogenic changes at L4-L5 and L5-S1, with some foraminal stenosis at each of those levels. (AH 205). Dr. Munk indicated his plan to arrange for a surgical intervention, once Plaintiff was cleared by Dr. Hares. (*Id.*).

On February 2, 2012, Dr. Mustafa A. Hares, a bariatric surgeon, reported to Dr. Munk on his surgical consult. (AH 217-218).[4] Dr. Hares reported Plaintiff was in serious pain, and wanted to go forward with surgery as soon as possible. (AH 218). He concluded Plaintiff was a very good candidate for an anterior lumbar interbody fusion of L4-5 and L5-S1. (*Id.*).

On February 3, 2012, Sedgwick acknowledged receipt of Plaintiff's claim for LTD benefits. (AH 194). In a letter dated February 27, 2012, Sedgwick approved Plaintiff's claim for LTD benefits, beginning February 15, 2012. (AH 235-236). The letter advised Plaintiff that in order to qualify for future benefits, she must comply with all relevant Plan provisions, be under

---

4 This report apparently was sent to Sedgwick as well.

the regular care of a licensed physician, and continue to be unable to perform the material and substantial duties of her own occupation. (AH 235).

Dr. Munk performed anterior lumbar fusion on February 22, 2012, and posterior lumbar fusion on February 24, 2012. (AH 256-260). Plaintiff had an MRI on March 22, 2012, due to her complaint of new pain extending down both legs. (AH 261-262). The MRI revealed no finite recurrent disc herniation, but mild effacement of the anterior thecal sac at L5-S1 on the left, and mild facet arthrosis at L4-5. (*Id.*). Dr. Munk met with Plaintiff on March 28, 2012, reviewed those findings, and concluded that Plaintiff's continuing discomfort was "just more recovery." (AH 254). Confusingly, he apparently completed one Patient Disability Statement on March 28, 2012, indicating Plaintiff was disabled until April 18, 2012, and a second that same date indicating the end of her disability period was "to be determined." (AH 239, 240).

On May 22, 2012, Dr. Munk completed an evaluation of Plaintiff at Sedgwick's request. He stated that Plaintiff's primary diagnosis was lumbar radiculopathy, and her secondary diagnosis was cervical radiculopathy. (AH 265-267). Dr. Munk approximated Plaintiff's return to work date as July 13, 2012. (*Id.*).

From March 6, 2012, through August 23, 2012, Plaintiff continued to follow-up with Dr. Munk for her anterior-posterior fusion, with Dr. Jeffrey D. Mendelson for her previous shoulder surgery, and with Dr. Anthony J. Oddo, D.O., regarding her pain management. (Defendant's Facts, ¶ 28, citing AH 271-279, 303-305, 365-366, 382-383). Plaintiff further attended numerous physical therapy sessions between June 26, 2012, and September 4, 2012. (AH 342-360).[5] On September 11, 2012, Dr. Munk completed an APS, noting Plaintiff's current course of treatment included pain management, medication, and follow-up, and stating her return to work date was undetermined, pending pain management progress. (AH 368).

---

5 Plaintiff's physical therapist, Bernard F. Tonsor, described her plan of care as "increase abdominal strength." (AH 342-360).

Plaintiff returned to Dr. Munk on September 12, 2012, who noted she was ambulating with the assistance of a single prong cane, her upper and lower extremity strength was intact, she had no neurological deficits, and no atrophy of the extremities. (AH 386). Dr. Munk further noted x-rays of Plaintiff's cervical and lumbar spine showed that her fusions were in good position, without any back out or failure, but that there was a small disc bulge at C3-C4 (unchanged from her prior MRI). (*Id.*).

Plaintiff continued to meet with Dr. Oddo for pain management between September 24, 2012, and October 26, 2012. (Defendant's Facts, ¶ 32, citing AH 446-448). She further continued physical therapy from September 17, 2012, through November 8, 2012. (*Id.*, ¶ 34, citing AH 399-417). On November 8, 2012, physical therapist Tonsor noted that Plaintiff reported feeling much stronger overall, and that she had increased functional mobility with performance of exercises. (*Id.*, citing AH 399). He discharged her at that time, however, for having reached a plateau in therapy gains. (*Id.*).

In a letter dated October 26, 2012, the Social Security Administration notified Plaintiff that she qualified for Social Security Disability benefits, beginning November, 2011. (AH 421-424). As a result, Plaintiff's LTD benefits were reduced. (AH 426).

Plaintiff continued to meet with Dr. Oddo for pain management from November 19, 2012, through March 28, 2013. (Defendant's Facts, ¶¶ 38-39, citing AH 443-444, 530-535). She further continued physical therapy from December 3, 2012, through February 5, 2013, with the plan of care cited as "work on posture." (AH 455-460, 483-492, 497-508).

On January 9, 2013, Dr. Munk completed a medical/progress report on Plaintiff, saying her MRI "actually looks very perfect." (AH 534). He further noted that she continued to complain of both neck and low back pain, but that her lumbar spine showed anterior and

posterior cages in perfect position without back out or failure. (*Id.*). Dr. Munk concluded as follows:

> This is a very challenging individual. She had complaints both of significant neck and low back pain status post decompression and fusions. I do not have any other surgical options for her. She is going to continue with pain management at this point. She may also have some fibromyalgia and we talked to her about maybe seeing a rheumatologist at some point. She would rather hold off on that. We also talked about a spinal cord stimulator just for her low back symptoms as a last resort, but she also is not interested in that as of yet. I will see her back in about four months to see how she is coming along.

(*Id.*)

On February 28, 2013, Sedgwick requested information from Dr. Charles Huebner, a rheumatologist. (Defendant's Facts, ¶ 42; AH 515). The form was returned, stating as follows: "No rheumatic condition warranting disability. We diagnosed fibromyalgia and do not write for disability for it." (*Id.*).

Dr. Munk completed another APS for Sedgwick on April 25, 2013. (AH 541-543). He noted her primary diagnosis was lumbar radiculopathy, and her secondary diagnosis was sacroiliitis. (AH 541). Dr. Munk concluded Plaintiff remained totally disabled, with additional restrictions including no prolonged standing/sitting, no prolonged walking, no lifting, bending, stooping, no pushing or pulling. (AH 542-543). Finally, Dr. Munk approximated her return to work date as October 10, 2013. (AH 543).

Plaintiff visited Dr. Oddo four more times from April 25, 2013, through October 24, 2013. (AH 553-554, 556-557, 638-639, 641-642). Plaintiff's chief complaints remained neck and back pain. (AH 553, 556, 638). Dr. Oddo consistently noted her strength in her lower and upper extremities as 5 out of 5, however. (AH 553, 556, 638, 641).

On July 22, 2013, Sedgwick informed Plaintiff that effective February 14, 2014, she would exhaust her benefits under the Own Occupation definition of Disability. (Defendant's Facts, ¶ 44, citing AH 571-572). Thereafter, in order to be eligible for benefits, Plaintiff would

have to be disabled from Any Occupation.  (*Id.*).  In an effort to gather more information, Sedgwick requested that Plaintiff complete a Daily Activities Review.  (AH 594-599).

Plaintiff returned to Dr. Munk on October 23, 2013.  (Defendant's Facts, ¶ 47, citing AH 640).  He noted that Plaintiff still had neck and low back pain, "but part of this is probably more fibromyalgia related."  (AH 640).  Dr. Munk continued as follows:

> **RADIOGRAPHS:**  Her x-rays show a one-level ACDF in good position without back out or failure.  When compared to prior films there is no change. We did get a postoperative MRI, which looks excellent.  Her x-rays of her lumbar spine show an anterior-posterior fusion L4-S1.  Everything there also looks good and similar.  Her postoperative MRI of that area also shows a nice decompression and no adjacent level disease….
>
> **PLAN:**        The patient most likely has just fibromyalgia.  She will follow up with pain management.  I need to see her back on an annual basis.

(*Id.*).

On December 17, 2013, Sedgwick requested that Plaintiff have an Independent Medical Examination ("IME") with Dr. David M. Gast, M.D., board certified in physical medicine and rehabilitation.  (AH 647, 654).  Dr. Gast completed the IME on January 21, 2014, and concluded in relevant part as follows:

> **History of Present Illness:**  This is a 54-year-old right-handed female who presents for an independent medical opinion.  She presents with multiple complaints.  She states that she hurts throughout her entire spine, from the base of her head, all the way down her body.  She has neck pain that radiates to her shoulders.  She has numbness in the right leg when she sits for a long time.  She has numbness and tingling in her hands.  The spine pain feels like someone is twisting her spine and then bending it to try and break it.  She has a constant low back pain with intermittent burning sensations.  She's been told she has bursitis in her left hip.  She has cramping in her feet.  She's been told that she has arthritis in her back, but no pinched nerve has been found.  She has been told she has inflammation of her sacroiliac joint.  For treatment, she has had multiple sessions of physical therapy, a fusion at C5 and C6.  In the lumbar spine she's had a fusion from L4-S1.  Her current plan is to be tested for spinal cord stimulator.  She has had EMGs and multiple MRI tests for workup.
>
> Currently, she states that she has a lot of difficulty bending.  She had to give up bowling and playing with her grandkids because of her pain issues.  Cooking has

been very limited because of the difficulty she has standing for long periods. She also mentions that she has difficulty using a can opener and opening bottles. She uses a shower chair to avoid standing in the shower. She has difficulty reaching to shave her legs and reaching overhead to dry her hair. She has difficulty folding clothes and states that her husband does a great deal of the housework and cooking. She also states that driving aggravates her back, as does riding as a passenger. She is currently using a 2002 PT cruiser with an automatic transmission. She ambulates with a cane, but has used a walker in the past. She states that she does not do any of the outdoor activities and always washes her vehicle with an automatic car wash….

**Discussion:**   Overall, she moved around very well. Her grip strength testing did show some inconsistencies, but is in the average range for a sedentary female worker….

She drove herself in her PT cruiser….

She regularly uses a cane. She has used a walker and a back brace in the past, but not currently.

Her most recent job as a medical biller primarily had her seated in front of a computer screen entering and gathering information. However, she would occasionally have to get up for printing supplies, mail, and to answer billing questions for the doctors or patients. One of her jobs did require her to drive to the post office. She could not be specific on the weight of a full box of billing forms.

The claimant states that she is unable to perform activities such as cutting grass, raking leaves, shoveling snow, and vacuuming because of her low back pain and shoulder problems. She does do some dishes by hand, preferring not to repeatedly bend to place things in the dishwasher. She does fold laundry, but states her husband carries the baskets. She also states her husband does the vacuuming.

Objectively, I did not find any focal deficits in strength. Her grip strength is average. Her range of motion is sufficient to perform the medical billing job that she describes to me. The only impediment to her returning to work is her subjective complaints of pain. On a social level, the fact that she is on Social Security Disability, her husband is retired and they have relocated to Northern Michigan, are additional impediments to her returning to work. I do agree that she was impaired from working during the healing process after her cervical and lumbar fusions. However, at this point, these are well healed and stable. The rotator cuff surgeries are well healed, also and would not prevent her from returning to her medical billing occupation.

(AH 651, 653-654).

In a letter dated February 11, 2014, Sedgwick denied Plaintiff's claim for continuing LTD benefits, stating she did not satisfy the definition of disability beyond February 14, 2014. (AH 655-657). After delineating the LTD Plan's definitions of disability and the findings of Dr. Gast, the letter stated as follows:

> Although we are aware that you have been previously awarded Social Security Disability benefits, current medical do not indicate that you continue to be disabled from all work activity. Based on this review it has been determined that you do not meet the definition of disability beyond 02/14/2014. Accordingly, we reached the decision that you do not qualify for benefits under the terms of the Ascension Health Long Term Disability Plan.

(AH 656).

On March 12, 2014, Plaintiff met with Dr. Herman Ruiz, M.D., of Michigan Spine & Pain. (AH 668-670). It was decided that Plaintiff might benefit from a trial of a Spinal Cord Stimulation. (AH 669). Dr. Ruiz noted that if Plaintiff had a good experience with the trial, including significant improvement in terms of pain and/or function, he then would refer her to a neurosurgeon for permanent implantation of the stimulator. (AH 670). Plaintiff returned to Dr. Ruiz on March 18, 2014, when he noted that she reported approximately 50% pain relief. (AH 671). Plaintiff further reported interest in having the permanent implant done. (*Id.*).

On April 16, 2014, Plaintiff visited Dr. R. Blaine Rawson, M.D., of Neurosurgical Spine Specialists, who recommended a T7-8 laminectomy with placement of spinal cord stimulator on her left side. (AH 675-676). Plaintiff then submitted her formal appeal of Sedgwick's decision on May 14, 2014, attaching her medical records and explaining that she had the new surgery scheduled for May 20, 2014.[6] (Defendant's Facts, ¶ 51-52, citing AH 663-677).[7] On May 27,

---

6 Plaintiff's May 20, 2014, surgery apparently was postponed due to her brother's illness. (AH 738).
7 Plaintiff's primary care physician, Dr. Christopher D. Milan, D.O., submitted additional medical records on May 28, 2014, and Plaintiff herself submitted additional records from Michigan Spine and Pain on May 30, 2014. (Defendant's Facts, ¶¶ 55, 56, citing AH 700-737).

2014, John Paul Jones, Ph.D., a licensed psychologist, submitted a letter to Sedgwick on Plaintiff's behalf, in which he opined in relevant part as follows:

> Maria D. Moore was seen for initial evaluation on October 30, 2012. She has remained in treatment since that time. Based on my initial evaluation and subsequent treatment of her, she was and has been diagnosed with Adjustment Disorder with Mixed Anxiety and Depressed Mood, ICD-9-CM 309.28 and Pain Disorder associated with both psychological factors and a general medical condition, 309.89….

> Mrs. Moore denied any prior history of mental health treatment prior to entering treatment with John Paul Jones, Ph.D., Fully Licensed Board Certified Psychologist, on October 30, 2012….Her primary reason for entering treatment was for Depression that was exasperated (sic) by her pain. She recorded symptoms of irritability, loss of libido, moderate to severe depressed mood, loss of interests in usual activities, lack of energy, withdrawing from people, having mood swings and loss of motivation. Much of her Depression is driven by her physical pain which is unrelenting….

> It is my clinical opinion that Mrs. Maria D. Moore is totally disabled from work due to moderate to severe physical pain and moderate to severe Depression.

(AH 738-739).

On June 6, 2014, Sedgwick referred Plaintiff's complete claims file to Dane Street, which in turn remitted her medical records to three independent physician advisors ("IPAs") for review. (Defendant's Facts, ¶ 58, citing AH 740-1149, 1382). Dr. Richard Kaplan, M.D., board certified in physical medicine and rehabilitation, completed an independent review from a pain medicine and rehabilitation perspective. (AH 1152-1162). Prior to issuing his review, Dr. Kaplan attempted to consult with Drs. Herman Ruiz, Christopher Milan, and Blaine Rawson, but was unable to establish contact. (AH 1154). After summarizing Plaintiff's treatment history, Dr. Kaplan concluded as follows:

> The claimant is not disabled from the ability to perform any occupation for which she may be qualified by education, training or experience as of 02/15/14 to RTW.

> The claimant is a 55-year-old female with a diagnosis of brachial neuritis, chronic backache, chronic neck pain, chronic pain, fibromyalgia, and anxiety. The claimant works as a medical biller with job duties to include responsible for the

detailed of accounts after initial billing in order to obtain timeliness of payments, maximum collectability and account resolution.

The claimant has a history of multifocal chronic pain including fibromyalgia, C56 fusion, and L4-s1 fusion. She has been treated with multiple medication classes, spinal cord stimulation, and physical therapy. The claimant continues to have complaints of pain. However, no specific impairing neurological deficits have been documented. An IME by Dr. Gast noted mild tenderness and slightly limited range of motion. Dr. Gast stated that the claimant's recent surgeries to include cervical and lumbar fusions and rotator cuff surgery was all healed.

In this situation, encouragement of functional restoration and increased activity is recommended. I would defer to a mental health reviewer for any additional assessment from that perspective.

In summary, the claimant has subjective symptoms, but they do not correspond to any clinical or diagnostic findings. The records lack any clinical data to support that the claimant is disabled from the ability to perform any occupation for which she may be qualified by education, training or experience as of 02/15/14 to RTW from a pain medicine and rehabilitation perspective.

(AH 1160). Dane Street also referred Plaintiff's file to Dr. Fred Moss, M.D., board certified in psychiatry, who completed an independent review from a psychiatric perspective. (AH 1163-1172). Prior to issuing his review on June 12, 2014, Dr. Moss attempted to consult with Dr. Milan, but was unable to establish contact. (AH 1165). Dr. Moss was able to consult with Dr. Jones, and he summarized their discussion as follows:

I spoke to John Paul Jones, PhD. Dr. Jones reports that he sees the claimant approximately 3 times per month working on management of her physical pain through the tools of mindfulness and cognitive restructuring. He reports that she frequently reports feeling depressed to Dr. Jones and reports that the depression primarily stems from her physical pain. The claimant recently complained that she has been more stressed due to the death of her mother and then brother.

He notes that she uses a cane when ambulating, always on time with her appointments, well dressed, well groomed, and if she does miss an appointment will often notify Dr. Jones and reschedule. He reports he last saw her May 16 and that she is slowly improving using the tools that they have been practicing.

In summary, he reports that he thinks her physical pain is the primary problem and that this is worsening her symptoms of depression.

(AH 1165-1166).  Dr. Moss then summarized Plaintiff's treatment history, and concluded as

follows:

> The claimant is not disabled from the ability to perform any occupation for which she may be qualified by education, training or experience as of 02/15/14 to rtw.
>
> The claimant is a 55-year-old female who worked as a Medical Biller, the job duties of which are noted above.  The claimant has been diagnosed with brachial neuritis, chronic backache, chronic neck pain, chronic pain, fibromyalgia, and anxiety.
>
> Based on the information presented and a review of the overall medical documentation with respect to psychiatric issues, there is no information to substantiate or warrant a determination of impairment as of 02/15/14 to rtw.
>
> The records reflect in one letter from John Paul Jones, Ph.D. (Psychology/Cognitive and Behavioral Psychology) on 05/27/14 that the clamant was seen and treated for the diagnoses of adjustment disorder with mixed anxiety and depressed mood as well as panic disorder associated with both psychological and general medication factors since 10/30/2012.  However, there are no progress notes or evaluations to indicate the course of treatment, progress, or mental status evaluations to determine the level of functionality, or provide evidence that clinically supports the claimant as impaired due to a psychiatric condition.
>
> Therefore, the claimant is not disabled from the ability to perform any occupation for which she may be qualified by education, training or experience as of 02/15/14 to rtw….
>
> It was indicated [in Dr. Jones' 5/27/14 letter] that the claimant had no prior history of any mental health treatment, but she remained under treatment since 10/30/2012 primarily due to depression secondary from pain.  It was indicated that the claimant had signs and symptoms of irritability, loss of libido, moderate to severe depressed mood, anhedonia, anergia, social withdrawal, mood swings and motivation loss.  There were no suicidal ideations or hospitalizations due to psychiatric manifestations.  There are no progress notes or evaluations to indicate course of treatment, progress, or mental status evaluations to determine the level of functionality, or provide evidence that clinically supports the claimant as impaired from any occupation due to a psychiatric condition.

(AH 1170-1171).

On June 20, 2014, Dr. Rawson performed a T7-8 Thoracic Laminectomy and initial

placement of spinal cord stimulator and generator on Plaintiff.  (AH 1175-1176).  Plaintiff

submitted those records to Sedgwick for review, and further submitted additional medical

records from Michigan Spine and Pain and Neurological Spine Specialists on July 15, 2014.

(Defendant's Facts, ¶¶ 69, 71; AH 1177-1189). Dr. Kaplan then submitted an addendum to his

original IPA review on July 25, 2014. (AH 1191-1194). Prior to submitting the report, Dr.

Kaplan established contact with Dr. Herman Ruiz, and summarized their discussion as follows:

> On 07/25/14, I spoke with Dr. Ruiz. Dr. Ruiz agrees that given the claimant's recent spinal stimulator trial, it would be appropriate to attempt functional restoration with a job involving minimal lifting as well as sitting versus standing.

(AH 1192). In response to a question whether the new, additional medical documentation and/or

discussion with Dr. Ruiz altered his determination, Dr. Kaplan stated as follows:

> The new information supports, but does not change, my prior determination in this case. This claimant is status post spinal cord stimulator placement of 06/20/14.
>
> The fundamental indication for a spinal cord stimulator is as part of an unequivocal active functional restoration program. After such a procedure, the rationale for encouraging activity is stronger than prior to this procedure. Therefore the new information strengthens my prior recommendation to encourage usual activity without restrictions or limitations.

(AH 1192-1193).

Finally, Dane Street submitted Plaintiff's records to Dr. Leo Lombardo, M.D., board

certified in pain management, for an independent evaluation. Dr. Lombardo submitted his

findings on August 15, 2014, concluding in relevant part as follows:

> Given the documented findings, medical conditions and diagnoses, the claimant's condition requires restrictions or limitations for the period beginning 02/15/2014….
>
> The claimant has chronic neck and back pain, refractory to surgical fusion as well as conservative treatments like physical therapy. However, postsurgical imaging of the neck and spine are noted to be normal by a spine surgeon, the claimant is able to participate in physical therapy, and there are no abnormalities in sensory or motor function noted on recurrent physical examinations. The only consistent physical examination abnormality of the musculoskeletal system is that of diffuse tenderness of muscles. Given the history of fusion of the neck and back, limitations in range of motion of the spine impair the claimant's movements. The claimant is unable to reach overhead, bend, stoop, and crawl at any frequency. The claimant can lift, carry, push, and pull up to 20 pounds occasionally and 10

pounds frequently. The claimant can stand or walk for 20 minutes at a time and for a total of two (2) hours. There are no other restrictions or limitations supported by the medical records provided.

(AH 1219-1220). Dr. Lombardo continued to opine that while the expected duration of Plaintiff's restrictions/limitations was permanent, she could perform any work within those restrictions/limitations. (AH 1220).

On August 21, 2014, Sedgwick referred Plaintiff's matter to Genex Services to conduct a Transferrable Skills Analysis ("TSA"). (Defendant's Facts, ¶ 78, citing AH 1248). The TSA was to be based on Plaintiff's job description, work history, and independent physician reviews of her claims file, including any restrictions reported therein. (*Id.*). Genex further was instructed that all transferrable occupations must have minimal earnings of $2337.92 per month, or $28,055.04 annually. (*Id.*).

Genex completed its TSA on August 25, 2014. (AH 1306-1308). Genex concluded the following occupations would be appropriate for Plaintiff: Medical Record Coder, Hospital—Admitting Clerk, and Benefits Clerk II. (AH 1307).

On September 12, 2014, Dr. Lombardo submitted an addendum to his prior report, based on his teleconference with Plaintiff's treating physician, Dr. Milan.[8] Dr. Lombardo concluded as follows:

> Based on the outcome of the attempted teleconferences with the claimant treating providers, the previous determination has not been altered.
>
> I spoke to Dr. Milan regarding signs of physical impairment. It was his opinion that the claimant has the capacity for sedentary work with limited lifting, pulling, and pushing and no bending, crawling, or lifting overhead due to a limitation in range of motion and muscle stiffness on physical examination. He believes that the claimant does require opportunities every 30-60 minutes for changing of position, such as by standing for a short time. This is reasonable and consistent with the claimant's documented physical examination and imaging findings, and does not change the prior determination. The claimant's condition requires

---

[8] Dr. Lombardo attempted to establish contact with Dr. Ruiz and Dr. Rawson, but was unsuccessful. (AH 1314).

restrictions or limitations for the period beginning 02/15/2014 from a pain management perspective.

(AH 1315).

Finally, Michigan Spine & Pain submitted an additional progress note on October 8, 2014, relating to Plaintiff's appointment there on October 7, 2014. (AH 1318-1321). After reviewing the progress note Dr. Lombardo submitted a second addendum on October 16, 2014, stating in relevant part as follows:

> Attempts were made to have a successful teleconference with no success.[9] The prior determination is unchanged by the additional medical records.
>
> On 10/07/2014, examination revealed that the claimant was well developed, well nourished, and was not in acute distress. She had right antalgic gait. She also used a straight cane as an assistive device. She was alert and was oriented to time, place, and persons. On assessment, she had post laminectomy syndrome of the lumbar region, chronic pain not elsewhere classified (NEC), degenerative disc disease not otherwise specified (NOS), lumbago, cervicalgia, joint pain of the hip, and limb pain. There are no ROM provided for review, or other findings that would alter the prior determination.
>
> The newly submitted medical records reveal the claimant continues with pain located on the lower back, neck, and hips. The claimant continues to require restrictions or limitations as noted in the prior determination.

(AH 1324).

In a letter dated November 3, 2014, Sedgwick affirmed the denial of benefits for the period of February 15, 2014, and ongoing. (AH 1335-1337). Specifically, Sedgwick stated that its medical file review, together with the independent reviews of Drs. Kaplan and Moss, did not support Plaintiff's inability to perform any occupation as defined in the LTD Plan for the period of February 15, 2014, and ongoing. (AH 1337).

---

9 Dr. Lombardo attempted to contact Dr. Herman Ruiz, and Dr. Christopher Nolan/Dr. Marvin Blieberg. (AH 1322-1323).

Plaintiff filed her Complaint in the matter on February 20, 2015. (ECF No. 1). As stated above, Defendant filed its Motion for Summary Judgment on March 4, 2016, and Plaintiff filed her Motion for Summary Judgment on March 16, 2016. (ECF Nos. 24, 31).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Id.* at 249.

## DISCUSSION

The Eighth Circuit has held that, "[u]nder ERISA, a plan participant may bring a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Pralutsky v. Metropolitan Life Ins. Co.*, 435 F.3d 833, 837 (8th Cir.), quoting 29 U.S.C. § 1132(a)(1)(B), *cert. denied*, 549 U.S. 887 (2006). "The district court reviews de novo a denial of benefits in an ERISA case, *unless* a plan administrator has discretionary power to construe uncertain terms or to make eligibility determinations, when review is for abuse of discretion." *Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan*, 476 F.3d 626, 628 (8th Cir. 2007) (emphasis in original) (citation omitted).

In the instant case, Plaintiff does not dispute that the LTD Plan granted Sedgwick (through a grant of authority from Ascension) the discretionary authority to determine eligibility for benefits and construe terms of the Plan. (AH 8, 15-18, 100, 122). The standard of review for this Court thus is abuse of discretion.

> Under the abuse of discretion standard, the proper inquiry is whether the plan administrator's decision was reasonable; *i.e.*, supported by substantial evidence. In considering the reasonableness of a plan administrator's fact-based disability determination, courts should consider whether the decision is supported by substantial evidence. Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001) (internal quotation marks and citations omitted). In making its determination "a reviewing court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales." *King v. Hartford Life and Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (internal quotation marks and citation omitted). Finally, "[a] decision supported by a reasonable explanation will not be disturbed even if another reasonable interpretation could be made or if the court might have reached a different result had it decided

the matter de novo." *Phillips-Foster v. UNUM Life Ins. Co. of America*, 302 F.3d 785, 794 (8th Cir. 2002) (citation omitted). *See also Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009) (emphasis in original) (internal quotation marks and citation omitted) ("The requirement that the [plan administrator's] decision be reasonable should be read to mean that a decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision.").

Upon consideration of the record before it, the Court cannot say that Sedgwick abused its discretion in denying Plaintiff LTD benefits. As noted above, Sedgwick originally approved Plaintiff's claim for LTD benefits beginning February 15, 2012, based on Dr. Munk's progress reports and Plaintiff's planned surgeries. (AH 235-236). The benefits lasted until February 14, 2014, the entire 24 month period of Disability allowable under the Own Occupation standard.

On July 22, 2013, after Dr. Munk opined that Plaintiff was a "challenging individual," and Dr. Huebner opined that Plaintiff had fibromyalgia[10], a condition not warranting disability, Sedgwick requested that Plaintiff complete a Daily Activities Review and undergo an IME[11], in order to assess her continued eligibility for benefits under the Any Occupation standard. (AH 534, 515, 571-582, 647). It was only after receiving the IME, in which Dr. Gast concluded that Plaintiff was not precluded from performing her own job, much less any job for which she was qualified, that Sedgwick denied Plaintiff's claim for LTD benefits. (AH 651-657).

Once Sedgwick received Plaintiff's appeal, including both her updated medical documentation and notification of her scheduled laminectomy with placement of spinal cord stimulator, it sent Plaintiff's complete claims file to Dane Street, which in turn remitted it to three separate IPAs for review. First Dr. Richard Kaplan, board certified in physical medicine

10 Dr. Munk concurred that Plaintiff probably had "just fibromyalgia." (AH 640).
11 Sedgwick requested the IME in December, 2013. (AH 647).

and rehabilitation, concluded Plaintiff was not disabled from the ability to perform any occupation for which she was qualified, as she had only subjective symptoms not corresponding to any clinical or diagnostic findings. (AH 1160).[12] In an addendum, submitted after Plaintiff underwent the thoracic laminectomy and initial placement of spinal cord stimulator and generator, Dr. Kaplan stated that his prior determination was unchanged, as "[a]fter such a procedure, the rationale for encouraging activity is stronger than prior to this procedure." (AH 1192-1193).[13] Second Dr. Fred Moss, board certified in psychiatry, concluded after speaking with Plaintiff's treating psychologist[14] that Plaintiff was not disabled from the ability to perform any occupation for which she was qualified, as "[t]here are no progress notes or evaluations to indicate course of treatment, progress, or mental status evaluations to determine the level of functionality, or provide evidence that clinically supports the claimant as impaired from any occupation due to a psychiatric condition." (AH 1170-1171). Finally Dr. Leo Lombardo, board certified in pain management, concluded that while Plaintiff's condition warranted restrictions on her activities, she was able to perform work within those limitations. (AH 1219-1220).

Sedgwick did not end its review at this time. Instead, after reviewing Dr. Lombardo's proposed limitations, Sedgwick referred the matter to Genex to conduct a TSA based on Plaintiff's job description, work history, and claims file. (AH 1248). Sedgwick received both the TSA, which concluded several occupations would be appropriate for Plaintiff within her stated limitations (AH 1306-1308), and two addenda from Dr. Lombardo, in which he opined after speaking with Dr. Milan and reviewing additional records that Plaintiff had the capacity for

---

12 As noted above, prior to submitting his original report Dr. Kaplan was unable to establish contact with Drs. Herman Ruiz, Christopher Milan, and Blaine Rawson. (AH 1154).
13 Dr. Kaplan expressed this opinion after establishing contact with Dr. Ruiz, who agreed that "given [Plaintiff's] recent spinal stimulator trial, it would be appropriate to attempt functional restoration with a job involving minimal lifting as well as sitting versus standing." (AH 1192).
14 As noted above, Dr. Moss was unable to establish contact with Dr. Christopher Milan. (AH 1165).

certain forms of sedentary work. (AH 1314-1316, 1322-1325).[15] Only then did Sedgwick affirm the denial of Plaintiff's benefits for the period of February 15, 2014, and ongoing. (AH 1335-1337).

"When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metropolitan Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006) (citation omitted). Here, all four physicians reviewing Plaintiff's file, including Dr. Gast who physically examined Plaintiff, concluded that she was not so disabled as to require LTD benefits. They did so after noting there was little or no objective evidence of impairment, leaving only Plaintiff's subjective, uncorroborated complaints as evidence of her ailments. *See Id.*, citing *Coker v. Metropolitan Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002) (holding that providing only subjective medical opinions, which were unsupported by objective medical evidence, did not suffice to prove a claim for benefits); *see also Prezioso v. Prudential Ins. Co. of America*, 748 F.3d 797, 806 (8th Cir. 2014) (same).[16] Under these circumstances, the Court finds Sedgwick's decision to deny Plaintiff benefits was not an abuse of discretion, and thus even if another reasonable interpretation exists, this Court, "may not simply substitute its opinion for that of the plan administrator." *Fletcher-Merrit*, 250 F.3d at 1180. *See also Midgett*, 561 F.3d at 897-98 (holding the decision to deny the plaintiff's short-term disability claim was supported by substantial evidence, as the peer reviews "accurately represent[ed] [Plaintiff's] medical record and adequately address[ed] the evidence supporting her claim for disability," but "explained that these findings did not demonstrate that [Plaintiff] was unable to perform her job

---

15 Dr. Milan concurred with this assessment of Plaintiff's capabilities. (AH 1315).
16 Plaintiff complains that none of the reviewing physicians considered the effects of her prescribed medications on her ability to work. The Court's review of the record reveals that none of her treating physicians opined on such a limitation, however, and as acknowledged by Plaintiff it is the claimant's obligation to submit proof of disability.

duties."); *Rittenhouse*, 476 F.3d at 632 (internal quotation marks and citation omitted) ("[The Plan's] decision is supported by substantial evidence, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").  Defendant's Motion for Summary Judgment must therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED** with prejudice.  An appropriate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (ECF No. 31) is **DENIED**.


Dated this ___1st___ Day of July, 2016.


\s\   Jean C. Hamilton_____
UNITED STATES DISTRICT JUDGE